Fidel MALLETT, Appellant,

v.

The STATE of Texas.

No. 152–01.

Court of Criminal Appeals of Texas.

Dec. 19, 2001.

Linda J. Rhodes Schauer, Corpus Christi, for Appellant.

Matthew Paul, State's Atty., Austin, for State.

## OPINION

KEASLER, J., delivered the opinion of the Court joined by KELLER, P.J., and WOMACK, HERVEY, HOLCOMB, and COCHRAN, J.J.

Finding counsel to be ineffective, the Thirteenth Court of Appeals reversed Fidel Mallett's conviction despite there being nothing in the record to reveal counsel's motivation for his decisions. Since the record is silent, we presume that counsel's decisions were based on reasonable professional judgment, and we reverse the appellate court's judgment.

### Facts and Procedural History

Corpus Christi Freightliner hired Mallett to paint a truck for $800. After examining the finished product, the company's general manager decided that the paint job was "rough" and asked Mallett to go back over the truck with some clear coat. In retaliation, Mallett broke into the company's garage a few days later with a friend.

Mallett and his companion stole several air wrenches, a welder, a cut-off saw, and a blue money bag. They also took a pick-up truck and the tractor portion of an eighteen-wheeler. The pair made their getaway by driving the vehicles through a fence surrounding the company's shop area. Some time later, Nueces County Constable Oscar Mendoza saw Mallett speeding in the rig and pulled him over. As Mendoza stopped his car behind the vehicle, Mallett put the rig in reverse and backed over the officer's car. The rig forced the police car several yards back and landed Mendoza in a field. Mallett then managed to separate the rig from the police car and began to grind the gears of the semi-tractor. Fearing that Mallett was preparing to reverse and ram his car

again, Mendoza fired several shots at the rig, but Mallett drove away.

The State charged Mallett in one indictment with four offenses: the aggravated assault of Officer Mendoza; criminal mischief for damaging the rig by driving it into the police car; burglary of a building with intent to commit theft for his breaking into the business; and theft for taking the rig. Mallett entered an open plea and the trial judge sentenced him to concurrent terms of confinement. Mallett then filed a pro se letter with the trial court requesting a new trial and claiming his plea was involuntary. The same day, Mallett's attorney filed a motion for new trial. At the hearing on the motion, Mallett was not present and Mallett's lawyer did not make any arguments.

On appeal, Mallett argued, among other alleged errors, that trial counsel provided ineffective assistance. The Court of Appeals agreed, finding five instances of deficient performance and concluding that Mallett was harmed.[1]

We granted the State's petition for discretionary review to decide whether the appellate court erred in finding counsel's performance deficient when the record provides no explanation for the motivation behind counsel's decisions. We also granted review to determine if the Court of Appeals conducted a proper prejudice analysis.

### Ineffective Assistance of Counsel— Legal Background

■ ■ To prevail on a claim of ineffective assistance of counsel, an appellant must establish that his lawyer's performance fell below an objective standard of reasonableness and that there is a "reasonable probability" the result of the proceeding would have been different but for

---

1. *Mallett v. State*, 28 S.W.3d 603, 608 (Tex. App.—Corpus Christi 2000).

counsel's deficient performance.[2] A reasonable probability is a probability sufficient to undermine confidence in the outcome.[3] The purpose of this two-pronged test is to judge whether counsel's conduct so compromised the proper functioning of the adversarial process that the trial cannot be said to have produced a reliable result.[4]

 The review of defense counsel's representation is highly deferential and presumes that counsel's actions fell within a wide range of reasonable professional assistance.[5] When the record is silent on the motivations underlying counsel's tactical decisions, the appellant usually cannot overcome the strong presumption that counsel's conduct was reasonable.[6] We explained in *Thompson v. State* that in order to defeat *Strickland's* presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness."[7] In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions.[8]

## Analysis

### I.

 The appellate court first criticized counsel for not moving to withdraw Mallett's guilty plea after he testified that he did not intend to drive over Officer Mendoza's car.[9] Mallett testified as follows:

Defense Counsel: Okay. And if—Why did you—Why did you—Why did you back up your—that truck over Officer Mendoza?

Mallett: I panicked. I didn't know what to do.

Defense Counsel: You realize you could have killed him?

Mallett: Now I do, but at the moment, no.

Defense Counsel: You didn't have any intent to do that—

Mallett: No, I didn't.

Defense Counsel:—to hurt him? You just panicked?

Mallett: Yes.

\* \* \*

Prosecutor: You didn't intentionally do all this?

Mallett: Well—

Prosecutor: Yes or no?

Mallett:—not—Yes. I—

The Court: I'm sorry. Your answer was?

Mallett: Yes.

Prosecutor: Well, you intentionally did this or you did not? I'm confused by the answer.

---

**2.** *Strickland v. Washington,* 466 U.S. 668, 693–94, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

**3.** *Id.* at 694; *Hernandez v. State,* 726 S.W.2d 53, 55 (Tex.Crim.App.1986).

**4.** *Thompson v. State,* 9 S.W.3d 808, 812–13 (Tex.Crim.App.1999) (*citing McFarland v. State,* 845 S.W.2d 824, 843 (Tex.Crim.App. 1992), *cert. denied,* 508 U.S. 963, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993)).

**5.** *Tong v. State,* 25 S.W.3d 707, 712 (Tex. Crim.App.2000).

**6.** *See Thompson,* 9 S.W.3d at 813. *See also Jackson v. State,* 877 S.W.2d 768, 771 (Tex. Crim.App.1994); *Delrio v. State,* 840 S.W.2d 443, 446–47 (Tex.Crim.App.1992); *Tong,* 25 S.W.3d at 714.

**7.** *Thompson,* 9 S.W.3d at 814 (*quoting McFarland,* 928 S.W.2d at 500).

**8.** *Id.* at 813–14 (citations omitted).

**9.** *Mallett,* 28 S.W.3d at 608.

Mallett: I did not intentionally try to run over Mr. Mendoza.

Prosecutor: But you intentionally jumped a fence and broke into a building and you and your buddies took two trucks. That was intentional, right?

Mallett: At the time, yes.

\* \* \*

The Court: What did you intend to do when you backed up the big truck, the rig, onto Deputy Mendoza's car?

Mallett: I wanted to leave, Your Honor, but the truck—that was the first time I had driven a semi. And—

The Court: Well, if I understood the testimony correctly from Deputy Mendoza, you reversed the truck, you went back, you went towards the rear to where he was. Seems to me that took a lot of thinking.

Mallett: Your Honor, the gears on the semi are different from a regular car and I wasn't thinking straight. I was just trying to put it into a gear so I can leave.

The Court: Well, weren't you going forward at the time?

Mallett: I was parked.

The Court: Why were you going to leave?

Mallett: I got scared.

The Court: Of what?

Mallett: I don't know. I just got scared. I panicked.

■■■ Mallett told the trial court he was pleading guilty "because all the charges are, in fact, true," that he was pleading guilty "freely and voluntarily," and that it was his "own personal decision to plead guilty." Additionally, the trial judge warned Mallett that once his guilty plea was accepted and punishment was assessed, it would be too late to withdraw his plea. After assessing punishment the judge gave Mallett an opportunity to say why the sentences should not be imposed, and Mallett declined. The record shows appellant was properly admonished, and this establishes a prima facie case that the plea was knowing and voluntary.[10]

The Court of Appeals concluded that, because Mallett testified that his actions were not intentional, counsel should have asked the court to allow Mallett to withdraw his plea.[11] While Mallett did testify that his actions were not intentional, he also testified that his actions were intentional. The dissent argues that Mallett could have withdrawn his plea as a matter of right before the court assessed punishment.[12] But this assumes Mallett wanted to withdraw his plea, which is not supported by his equivocal testimony. Furthermore, even if Mallett's testimony was read as a protestation of innocence, all sorts of considerations may motivate a guilty plea.[13]

The record does not indicate why counsel did not request that Mallett's guilty plea be withdrawn. Defense counsel may have felt that he could not rebut the recitations in the record that Mallett's plea was freely and voluntarily entered. Notwithstanding, speculation on counsel's strategy is immaterial to our determination that

10. *Ex parte Williams,* 704 S.W.2d 773, 775 (Tex.Crim.App.1986).

11. *Mallett,* 28 S.W.3d at 608.

12. *Post,* at 70–71.

13. *See Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *see also North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

counsel has not been proven ineffective.[14] Again, when the record is silent as to why counsel failed to object, it is difficult for a defendant to overcome the first prong of *Strickland.*[15]

## II.

 Next, the Court of Appeals concluded that counsel erred in failing to object to the entry of judgments of conviction on counts that the prosecutor said he would abandon.[16] But as the appellate court itself recognized, these counts were never actually abandoned.[17] During the hearing, the following transpired:

Prosecutor: Well, I don't know how to handle this part. I think the Court is familiar there was some other "AR" numbers. One of them was a UUMV. I wrongly presumed that UUMV was the UUMV here. However, I'm told today it's an unrelated UUMV. [Defense Counsel] and I had discussed the possibility about I would no-charge it as long as the Court would consider it. And as far as the evidence to consider it, [Defense Counsel] told me his client would be willing to testify and tell you what had happened during this other UUMV, so I'd like to call the Defendant.

The Court: You're asking—

Prosecutor: For you to consider something else the Defendant may have done.

The Court: And to dismiss it under 12.45 of the Penal Code, is that what you're asking me to do?

Prosecutor: Basically, yes.

The Court: Well, the Defendant would have to enter an admission of guilt to that offense for there to be an absolute dismissal.

Prosecutor: Well, I guess from what I understand from the—from Defense Counsel, it's something for the Court to consider but the way they tell it he may—he's not necessarily guilty. It's more in the way I'll agree to no-charge it but I want the Defendant's story. It's really not a 12.45 cause I don't believe the Defendant's going to really accept full responsibility, but I think it would be interesting to the Court nevertheless. And they agree that if it does look like he's involved in it, that if there is a victim owing restitution that this Court would award that as part of this case also. So I guess it's not really a 12.45, but just something for the Court to consider.

The Court: Is this separate?

Prosecutor: The way they tell me it's a totally unrelated event after this.

Defense Counsel: It has a cause—It has an "AR" cause number, Your Honor.

The Court: Is it the same vehicle or another vehicle?

Defense Counsel: Another vehicle, another time.

Prosecutor: Totally unrelated, different victim, different vehicle.

The Court: Is the semi-tractor involved in Count II [criminal mischief] the same one in Count IV [theft]?

Prosecutor: Yes, Your Honor.

The Court: And both these happened at the same time?

Prosecutor: Yes, Your Honor. Now that you're mentioning it, I think I've seen some law that those two counts

---

14. *Jackson,* 877 S.W.2d at 771.

15. *Thompson,* 9 S.W.3d at 814.

16. *Mallett,* 28 S.W.3d at 608.

17. *Id.* at 606.

could be double jeopardy. We'll abandon the UUMV count.

The Court: Yes. Well, there's no UUMV.

Defense Counsel: It's a criminal mischief.

Prosecutor: Well, then I think those are separate enough and we'll keep them in.

The Court: Well, Count II says that there was criminal mischief upon the tractor.

Prosecutor: Yes, sir.

The Court: And Count IV says that he stole the tractor.

Prosecutor: I believe those are completely different and non-double jeopardy type offenses.

The Court: Were the damages the same?

Prosecutor: They apply to the same vehicle, yes, Your Honor. To make it easier, I'll go ahead and abandon.

The Court: Well, I'm just trying to figure this out as far as the damages are concerned.

Prosecutor: Well, basically, the damages that Mr. Hastings testified will all apply to Counts II, III, and IV.

The Court: Okay.

Prosecutor: He testified to the things taken from the building.

The Court: All right.

Prosecutor: And Nueces County has some separate damages for that then.

The Court: Okay. Do you have any other evidence?

Prosecutor: Well, I guess I'd like to call the Defendant with the Defense's approval—

Defense Counsel: No objection.

Prosecutor:—on this unrelated charge.

Based on this exchange, the Court of Appeals concluded that the judge did not grant the prosecutor permission to abandon anything.[18] Nevertheless, the court concluded that counsel should have objected.[19] We agree with the appellate court's first conclusion that the trial judge never acted on the prosecutor's suggestion. Therefore, there was no abandonment.[20] Counsel cannot be justifiably blamed for failing to object to the entry of judgments of conviction on offenses that had not been abandoned.

The dissent argues that our opinion "unduly impairs" any collateral attack Mallett may have.[21] The dissent suggests that, even when a record, like this one, is sufficient to rebut a claim of ineffectiveness, we should not look to that record.[22] According to the dissent, we should instead conclude that the record is insufficient to support the claim of ineffectiveness.[23] In that way, we would not foreclose Mallett from mounting a second attack in a writ application.

But it is not our job to preserve Mallett's habeas rights. Rather, it is our job to address the claims presented to us on appeal. Mallett's claim that counsel should have objected to the lack of abandonment is meritless because the record demonstrates that there was no abandonment. This record affirmatively shows nothing objectionable. That this conclu-

**18.** *Id.*

**19.** *Id.* at 608.

**20.** *See Ex Parte Preston*, 833 S.W.2d 515, 517 (Tex.Crim.App.1992); *see also* Tex.Code Crim. Proc. art. 28.11 (Vernon 1989).

**21.** *Post*, at 70.

**22.** *Post*, at 70.

**23.** *Post*, at 70.

sion may prejudice Mallett's ability to raise this identical claim in a later writ application should not, and does not, factor into our analysis.

## III.

■ The appellate court also concluded that counsel should have made some arguments in Mallett's favor and ensured Mallett's presence at the motion for new trial hearing.[24] *Thompson* instructs us to presume that counsel acted reasonably in a case such as this.[25] We find nothing in the record demonstrating that Mallett wanted to attend the hearing or that his attorney could have made any non-frivolous arguments at the hearing. The dissent claims that Mallett's pro se letter to the judge indicating that he was off his medication at the time of his guilty plea is sufficient to prove that counsel was defective.[26] But the presence of the letter in the record does not overcome the strong presumption that counsel acted reasonably.

We are not privy to any discussions Mallett and his attorney may have had concerning the merits of a motion for new trial. Counsel may have filed the motion for no purpose other than to extend the time limits for appeal.[27] Because the record is silent as to the motivation behind counsel's decisions, we are unwilling to conclude that counsel acted deficiently.

## IV.

Next, the Court of Appeals found that counsel erred in failing to object to the misjoinder of offenses.[28] Specifically, the court considered the aggravated assault and the criminal mischief offenses to have been misjoined with the burglary and theft offenses because they were not part of the same criminal episode.[29]

■ Under § 3.02 of the Texas Penal Code, a defendant may be prosecuted in a single criminal action for all offenses arising out of the same criminal episode.[30] A single proceeding removes the burden of multiple trials and eliminates the possibility of consecutive sentences.[31] The Court of Appeals found it "difficult to imagine any trial strategy" for not objecting to the misjoinder.[32] Assuming without deciding that these offenses were misjoined, counsel's silence could have been part of a strategic plan to obtain concurrent sentences.[33] Since the record is silent as to why counsel failed to object, we presume his conduct was reasonable.[34]

## V.

Finally, the Court of Appeals concluded that Mallett's lawyer erred in failing to object to certain double jeopardy problems.[35] The court found that, "[t]he same incident of misconduct was used to prove the aggravated assault and the criminal

---

24. *Mallett*, 28 S.W.3d at 608, 609.

25. *Thompson*, 9 S.W.3d at 814.

26. *Post*, at 71.

27. *Oldham v. State*, 977 S.W.2d 354, 361 (Tex.Crim.App.1998).

28. *Mallett*, 28 S.W.3d at 608, 609.

29. *Id.* at 608.

30. Tex. Penal Code Ann. § 3.02 (Vernon 1997).

31. *LaPorte v. State*, 840 S.W.2d 412, 414 (Tex. Crim.App.1992).

32. *Mallett*, 28 S.W.3d at 608.

33. *See* Tex. Penal Code Ann. § 3.03 (Vernon 1997).

34. *Thompson*, 9 S.W.3d at 814.

35. *Mallett*, 28 S.W.3d at 608–09.

mischief."[36] The court also determined that because the evidence presented to prove Mallett's specific intent to commit theft was the same evidence used to prove that he committed burglary, a double jeopardy bar existed with respect to those offenses as well.[37]

The Court of Appeals erroneously examined Mallett's double jeopardy claims under the now defunct "same conduct" test. This test was done away with in *United States v. Dixon*.[38] The proper test is the traditional "same elements" or "*Blockburger* test."[39] Under *Blockburger*, in a case in which the same act or transaction constitutes a violation of two distinct statutory provisions, the test is whether each provision requires proof of a fact which the other does not.[40]

Mallett's convictions for both aggravated assault and criminal mischief are not barred under *Blockburger* because each offense contains an element the other does not. The first degree aggravated assault charge required the State to prove that an individual was threatened with imminent bodily injury, that a deadly weapon was displayed or used during the assault, and that the offense was committed against a public servant while the servant was lawfully discharging an official duty; the criminal mischief charge did not.[41] The criminal mischief charge required the State to prove damage to tangible property without the effective consent of the owner; the aggravated assault charge did not.[42] In addition, there was no double jeopardy violation with regard to the theft and burglary offenses.[43]

Because there was no double jeopardy violation, counsel is not ineffective for failing to object.

## Conclusion

We conclude that the Court of Appeals erred in holding that Mallett's attorney was ineffective when the record provided no explanation for the motivation behind counsel's decisions. Each "deficiency" of counsel claimed by the appellate court could have been an exercise of reasonable professional judgment. Because Mallett failed to satisfy the first prong of *Strickland*, we need not address whether the Court of Appeals conducted a proper prejudice analysis. Therefore, we dismiss the second ground for review as improvidently granted. We reverse the judgment of the *Court of Appeals* and remand this case to that court for consideration of Mallett's remaining point of error.

Meyers, J., filed a dissenting opinion joined by Price, J.

JOHNSON, J., concurred in the result.

---

**36.** *Id.* at 608 (citations omitted).

**37.** *Id.* at 608–09.

**38.** 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993).

**39.** *Id.* at 704, 113 S.Ct. 2849. (Scalia, J. writing for the majority and Rehnquist, C.J., O'Connor, Kennedy, and Thomas, J.J., agreeing that the same elements test was the appropriate test for determining whether the subsequent prosecutions were barred by the double jeopardy clause).

**40.** *Ervin v. State*, 991 S.W.2d 804, 806 (Tex. Crim.App.1999) (*quoting Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932)).

**41.** *Compare* TEX. PENAL CODE ANN. § 22.02(a), (b)(2) (Vernon 1997) *with* TEX. PENAL CODE ANN. § 28.03(a)(1) (Vernon 1997).

**42.** *See id.*

**43.** *See Rice v. State*, 861 S.W.2d 925 (Tex. Crim.App.1993).

MEYERS, J., filed a dissenting opinion, in which PRICE, J., joined.

This Court is not the only court in the state possessed of the legal acumen necessary to understanding *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In the present case, the Thirteenth Court of Appeals made a determination that counsel's performance fell below an objective standard of reasonableness.[1] The majority's opinion unnecessarily overturns the Court of Appeals' ruling and impairs appellant's ability to mount a collateral attack on his conviction. *Mallett v. State,* 65 S.W.3d 59 (Tex.Crim. App. 2001) (hereinafter cited as "Majority Op."). Therefore, I dissent.

Appellant alleged and the Court of Appeals agreed that trial counsel was deficient in five particulars: (1) failure to object to the entry of judgments on convictions the prosecutor intended to abandon; (2) failure to move to withdraw appellant's guilty plea; (3) failure to secure appellant's presence or make arguments in appellant's favor at the hearing on defendant's motion for new trial; (4) failure to object to the misjoinder of offenses and (5) failure to object to two double jeopardy violations. *Mallett,* 28 S.W.3d at 607–08. We address the alleged deficiencies in the order stated above.

### Abandonment of Offenses

The Ground for Review before this court is as follows:

> May an appellate court reverse on grounds of ineffective assistance of counsel where counsel's acts or omissions could have been based upon sound tactical decisions, and where the record provides no explanation for the motivation behind counsel's decisions?

The majority's opinion on the issue of abandonment does not address the sufficiency of the record for analyzing counsel's performance. Rather, the majority concludes that because the Court of Appeals determined that the offenses had not been abandoned, counsel could not have been deficient for failing to object to entry of conviction on the offenses. Majority Op. at 66–67.[2]

However, the appellate court's consideration of whether the offenses had been abandoned and whether counsel was deficient in failing to object to the entry of convictions were two separate inquiries. Indeed, they were two separate points of error. In one point of error, appellant argued that the trial *judge* reversibly erred by convicting him on the criminal mischief, burglary and theft counts when the prosecutor stated his intention to abandon them. *Mallett,* 28 S.W.3d at 605. In the other, appellant argued that his trial *counsel* was deficient for failing to object to the entry of convictions after the prosecutor had stated his willingness to abandon them. Although the Court of Appeals could have explained its reasoning more thoroughly, the court acted safely within the boundaries of the law when it found counsel deficient for failing to object or secure the court's ruling on the prosecutor's statements. I cannot think of any

---

1. The Court of Appeals also determined that appellant was prejudiced by counsel's deficient performance. *Mallett,* 28 S.W.3d at 608–09. In light of the majority's resolution of this appeal, I decline to consider whether the Court of Appeals' prejudice prong analysis was correct.

2. The record demonstrates that the prosecutor offered to abandon only the criminal mischief count and not all three of the counts listed by the Court of Appeals. Because this discrepancy played no part in the majority's opinion, I do not address it and will assume for the purposes of this discussion that the Court of Appeals correctly listed the counts the prosecutor intended to abandon.

sound trial strategy in preserving extra counts for a client.

The majority's analysis of the relevant law is incorrect and it unduly impairs any collateral attack appellant may have had on the issue. As a general rule, a claim which was previously raised and rejected on direct appeal is not cognizable on habeas corpus. *Ex parte Torres*, 943 S.W.2d 469, 475 (Tex.Crim.App.1997). However, prior rejection of an ineffective assistance of counsel claim on direct appeal will not bar relitigation of the claim *to the extent that an applicant gathers and introduces evidence not contained in the direct appeal record. See id.; Tong v. State*, 25 S.W.3d 707, 714 n. 10; GEORGE E. DIX AND ROBERT O. DAWSON, 43 TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 45.58 (1995 & Supp.2000). The exception we crafted in *Torres* was premised on the notion that the record on direct appeal will *generally* be insufficient to determine whether or not counsel's performance was deficient. Here, without addressing the sufficiency of the record, the ground on which we granted review, the majority addresses itself exclusively to the question of whether or not appellant was prejudiced, i.e. whether or not the offenses had been abandoned.[3]

The majority's consideration of this issue thereby improperly decides the merits of appellants claim—on direct appeal and arguably on habeas corpus. Based on the

ground for review before us, the majority should have held that the record was insufficient to evaluate counsel's performance. In such an instance, the appropriate procedure is to overrule the Sixth Amendment claim without prejudice to the appellant's ability to dispute counsel's effectiveness collaterally.[4] *Robinson v. State*, 16 S.W.3d 808, 813 n. 7 (Tex.Crim.App.2000); *see also Thompson*, 9 S.W.3d at 814 (specifically noting that "[w]e are not deciding on this direct appeal ... that appellant did or did not receive the effective assistance of counsel during trial. Instead, we are unwilling to affirm the Court of Appeals' conclusion that, with the record provided, appellant successfully defeated the strong presumption that the decisions of counsel during trial fell within the wide range of reasonable professional assistance").

### Withdrawal of Guilty Plea

The majority indicates that the record is insufficient to evaluate counsel's performance in this regard. Majority Op. at 64–65. Yet although the majority states that a silent record is insufficient to meet the first prong of *Strickland*, its reasoning seems to be based primarily on the mistaken notion that appellant was not entitled to withdraw his plea. Majority Op. at 64–65.

At the hearing on appellant's plea of guilty, the trial court first heard evidence

---

**3.** I do not suggest that this or any other appellate court can never assess the prejudice prong of *Strickland*. *See* Majority Op. at 66–67. When, however, the ground for review presented to this court deals exclusively with the deficiency prong of *Strickland* and we *dismiss* the ground for review addressing the prejudice prong, a review of prejudice is beyond our purview. Stating that "[t]his record affirmatively shows nothing objectionable" does not transform a backdoor analysis of prejudice into a review of the sufficiency of the record.

**4.** This procedure is particularly appropriate in light of the fact that this Court has all but permanently foreclosed direct appeal as a means of arguing that an appellant's trial counsel rendered ineffective assistance. *See Thompson*, 9 S.W.3d 808, 813–14 (Tex.Crim. App.1999); Majority Op. at 63 ("when the record is silent on the motivations underlying counsel's tactical decisions, the appellant usually cannot overcome the strong presumption that counsel's conduct was reasonable").

on appellant's guilt. Later in the proceeding, *after* appellant testified that he accidentally reversed the semi-tractor into Officer Mendoza's vehicle, the trial court accepted appellant's plea and proceeded to take evidence and arguments on punishment.

A criminal defendant who enters a plea of guilty to the trial court may withdraw the plea as a matter of right until the judge takes the case under advisement or pronounces judgment. *McWherter v. State,* 571 S.W.2d 312 (Tex.Crim.App. 1978). The point at which a court takes a case under advisement does not come before the trial court accepts a defendant's plea. *See id.; Jackson,* 590 S.W.2d 514, 515 (Tex.Crim.App.1979). Here, because appellant's testimony came before the trial court had accepted his plea, he could have withdrawn his plea as a matter of right had his counsel made such a motion. Appellant had just offered testimony that, if believed, demonstrated he did not have the culpable mental state required for the commission of an assault. *See* Tex. Penal Code §§ 22.01(a)(1), 22.02(a). That appellant testified he intentionally engaged in the acts leading up to the assault is of no moment in assessing his mental state for the commission or non-commission of aggravated assault. The Court of Appeals properly held that defense counsel's failure

to make such a motion constituted deficient performance. Thus, the portion of the majority's opinion that suggests appellant could not have been prejudiced by the failure to withdraw the plea is inaccurate and should not be used as a basis for reversing the Court of Appeals.

### Motion for New Trial

The majority states that it finds "nothing in the record demonstrating that Mallett wanted to attend the hearing or that his attorney could have made any non-frivolous arguments at the hearing." Majority Op. at 67. The majority's analysis ignores both *Strickland* and the facts of this case. Here, while the majority finds nothing indicating that Mallett wanted to attend the hearing, the clerk's record contains a pro se letter, filed by appellant on May 6, 1999, in which appellant informed the judge that his plea was involuntary.[5] On that same day, Mallett's appointed counsel filed a notice of appeal, motion for new trial and *motion to withdraw as counsel of record.* He then set the hearing on the motion for new trial a mere eight days after filing these motions. He did not secure appellant's presence, nor did he make any arguments in appellant's favor at the hearing.[6]

**5.** Appellant's plea hearing took place on April 9, 1999. A request by a defendant for discretionary withdrawal of a plea, if presented within 30 days of sentence being imposed, is sufficient to enable the trial court to act even though the request does not comply with the normal formalities of a motion for new trial. *State v. Evans,* 843 S.W.2d 576, 577 (Tex. Crim.App.1992). Regardless of whether appellant's pro se letter would constitute a motion for new trial in the absence of a motion by counsel, it certainly demonstrates a desire on appellant's part to argue that his plea was involuntary. A hearing on a motion for new trial would have been the forum for Mallett to do so.

**6.** Somewhat ironically, counsel also deprived appellant of the opportunity to develop facts related to a claim of ineffective assistance. DIX & DAWSON, §§ 24.95, 45.58. Although a motion for new trial hearing may not be the ideal forum in which to develop facts necessary to an ineffective assistance of counsel claim, it may be the only forum for an indigent defendant in a non-capital case. *See Thompson,* 9 S.W.3d at 817 (Meyers, J., dissenting and noting that on application for habeas corpus relief, indigent defendant will not be appointed counsel or provided with transcript of record); *see also Torres,* 943 S.W.2d at 475 (noting that motion for new trial hearing not always suited for developing record for ineffective assistance claim be-

The majority suggests that the record is silent as to counsel's motivations and that counsel may have filed the motion simply to extend the time limits for appeal. The record is not silent in this respect. In fact, the majority is correct: counsel filed the motion for new trial to preserve appellate deadlines. At the hearing on the motion for new trial, the trial judge pointed out that counsel had to state a basis for his motion. Trial counsel responded by stating, "quite frankly, I didn't really feel like I could allege any clear-cut basis for Motion for New Trial, but I did feel like I had a duty to my client to go ahead and file that before the 30 days were up." The question before us is not whether it is ever reasonable to file a motion for new trial to preserve appellate deadlines. The question is whether it was objectively reasonable for counsel to bar his client from making arguments at the motion for new trial hearing when faced with his client's protestations that his plea was involuntary. The Thirteenth Court of Appeals considered these circumstances and concluded that counsel's actions fell below an objective standard of reasonableness. *Mallett*, 28 S.W.3d at 608. We need not reconsider facts that have already been considered and ruled upon by an intermediate appellate court.

### Misjoinder, Double Jeopardy

I do not dispute the majority's interpretation of the law relevant to the issues of misjoinder and double jeopardy. I note only that if the Court of Appeals misapplied the law relevant to these issues, this misapplication does not justify reversing the entirety of the Court of Appeals' decision—particularly where the remedy is a new trial and not an acquittal. The Court

cause trial may not be transcribed and allegedly ineffective counsel may still be represent-

of Appeals was only required to find that trial counsel was deficient for *one* of the five reasons alleged by appellant in order to grant a new trial. If the court was incorrect about two of the reasons, it was nevertheless correct about the remaining three and should not be reversed on the issue of counsel's deficient performance. Therefore, I respectfully dissent.